# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SYED ALI, | ) |
|         Plaintiff, | ) Consol. Case No.: 15-cv-06178 |
| v. | ) Judge Sharon Johnson Coleman |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, ASSOCIATES, LLC and BLITT & GAINES, P.C. and FREEDMAN ANSELMO LINDBERG, LLC n/k/a ANSELMO LINDBERG OLIVER, LLC | ) |
|         Defendants. | ) |
| YASMEEN ALI, as natural parent and next friend of SHA, a minor, | ) |
|         Plaintiff, | ) |
| v. | ) |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, and SANJAY S. JUTLA, and KEVIN J. EGAN, | ) |
|         Defendants. | ) |
| SYED A. ALI, | ) |
| Plaintiff, | ) |
| v. | ) |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, and KEVIN J. EGAN, | ) |
|         Defendants. | ) |
| SYED A. ALI, | ) |
|         Plaintiff, | ) |
| v. | ) |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |
|         Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Syed Asad Ali ("SAA"),[1] brings this action alleging various violations of the Fair Debt Collection Practices Act ("FDCPA), 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/ *et seq.* against Defendants, Portfolio Recovery Associates, LLC ("Portfolio"), Blitt & Gaines, P.C. ("Blitt"), and Freedman Anselmo Lindberg, LLC now known as Anselmo Lindberg Oliver, LLC ("Freedman"). All parties have filed cross-motions for summary judgment. For the following reasons, SAA's motion for summary judgment is denied [178], and Defendants' motions for summary judgment are denied in part and granted in part [177].

**Background**

All of the following facts are undisputed unless noted otherwise. SAA resides in Aurora, Illinois. SAA has a son, father, and two brothers with the same first and last name as him, "Syed Ali," but they all have different middle names. Portfolio is a Delaware limited liability company, licensed as a debt collection agency in Illinois pursuant to 225 ILCS 425/2, and as part of its business, it collects consumer debts for the purposes of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6). Freedman and Blitt are law firms that represented Portfolio in collecting the debt on the 8916 Account. Both qualify as debt collectors under FDCPA.

*8916 Account*

On March 25, 2011, Portfolio purchased a GE Money Bank Account ("8916 Account"), which was assigned to an individual named "Syed Ali" ("Debtor"). Debtor used a social security number ending in "8783" to open the 8916 Account and incurred a debt of $1,331.13 ("Debt") for "CareCredit Dental." CareCredit is a specialized card used for everyday health and personal care

---

[1] This opinion addresses the individual claims brought by Syed Asad Ali against Portfolio, Blitt, and Freedman, as opposed to the companion opinion addressing, his son, SHA's claims.

purchases, and the transaction generating the Debt was for payment to Alamo City Dental in San Antonio, Texas. Upon purchase, Portfolio received the information about Debtor that was included in his initial credit application, his name, social security number, and an address in Houston, Texas. SAA disputes that he opened this account or ever owed the Debt in question. He also disputes that the Debtor's social security number is valid or belongs to him.

Between April 14, 2011 and October 11, 2013, Portfolio placed several phone calls and sent multiple collections correspondences about the 8916 Account to the Debtor at two separate residences in Houston, Texas. A letter was returned as undeliverable from each address. In both 2011 and 2012, Portfolio received an address in Aurora, Illinois for the Debtor from TransUnion. Portfolio then directed its collection efforts against the Debtor towards the Aurora, Illinois address, sending two collection letters on March 21, 2014 and April 21, 2014. The Aurora, Illinois address was listed as active on the 8916 Account, meaning that it was determined to be where the Debtor most recently lived. SAA disputes that the Aurora, Illinois address was active for the Debtor.

On June 10, 2014, Portfolio retained Freedman to represent Portfolio in the litigation related to collection on the 8916 Account Debt. Portfolio provided Freedman with the same information that it received from the seller. On July 15, 2014, Freedman sent Debtor a collection letter at the Aurora, Illinois address. This letter contained a provision that instructed the recipient to contact Freedman within 30 days either to dispute or verify the debt was incurred by the recipient. The July 15 Correspondence was not returned as undeliverable. SAA maintains that he received the letter, but he took no action because he was confused and afraid to call Freedman. SAA gave the letter to his attorney.

On August 29, 2014, Portfolio submitted the name "Syed Ali," along with the Debtor's social security number, the Aurora, Illinois address, and the 8916 Account number to the credit reporting agencies. That same day, TransUnion provided Portfolio with a report for SAA instead of

3

the intended Debtor. Portfolio received another report from TransUnion on October 22, 2014 with SAA's updated contact information, and three similar reports from Experian in November of 2014. Experian and TransUnion regularly provide Portfolio with the current addresses and phone numbers associated with the debtors on the accounts Portfolio has stored in its database. Portfolio does not have control over the information that TransUnion or Experian returns to it. SAA does not challenge how Portfolio uses these companies, but disputes that Portfolio had any permissible purpose for pulling SAA's credit information regarding the 8916 or 7779 Accounts.

Prior to filing suit, Freedman conducted its own review of the 8916 Account to determine whether or not the address on file matched the Debtor on the 8916 Account. Freedman attempted to reach Debtor via phone to verify the Debtor's information as well. On December 1, 2014 Freedman filed a collection lawsuit in small claims court ("8916 State Action") against the Debtor on behalf of Portfolio to recover the obligation on the 8916 Account. An affidavit signed by Portfolio's custodian of records was attached to the complaint. Prior to signing affidavits for any lawsuit, it is Portfolio's practice to review the identity of the original creditor, merchant, seller, and debtor, last known address provided by the seller, account open date, date of last payment, date of default, charge off amount, amount at purchase, bill of sale, affidavit of sale, and any media provided by the seller. SAA disputes that Portfolio conducted this review.

On December 13, 2014, Portfolio executed substitute service for the 8916 State Action "[b]y leaving a copy of the SUMMONS/COMPLAINT at SYED ALI's usual place of abode . . .[Aurora, Illinois address] with his/her BROTHER, SYED ALI." SAA disputes the efficacy of the process server's affidavit because it cannot be determined whether the statements in it were about SAA or his brother "Syed Ali." Additionally, SAA maintains that none of his brothers were present on the day process was effectuated, and he was the only adult male living at the residence in Aurora, Illinois.

4

SAA's attorney filed an appearance in the 8916 State Action and attended the initial status hearing on January 8, 2015. He provided Freedman's attorney with his client's social security number and birthdate to prove that it did not match the intended Debtor's information. Freedman's internal notes from the hearing indicated that Freedman's attorney sought additional review to determine the social security number and date of birth of the person served. On January 23, 2015, Freedman conducted a skip trace review of the 8916 Account that showed multiple individuals with the name "Syed Ali" having different dates of birth associated with the Aurora, Illinois address. SAA contends that the investigation also uncovered that the social security number associated with the Debt differed by one digit from the one provided by Debtor in the credit application.

On February 1, 2015, Freedman's collection practice merged with Blitt and the 8916 Account and accompanying file notes were transferred to Blitt for collections. It is disputed whether these notes included the results of Freedman's January 23, 2015, investigation upon transfer. Blitt did not conduct a skip trace review of the 8916 Account upon receiving the file. The collections letter did not return undeliverable, and the same attorney that had previously handled the case with Freedman was handling it for Blitt. On February 10, 2015, SAA's attorney sent a follow-up letter to Freedman's attorney seeking the results of the investigation into the identity of the Debtor. This letter was eventually forwarded to Blitt. After reviewing the letter, Blitt coded the 8916 Account as fraudulent, in accordance with its policy for when a debtor denies owing the debt. Blitt's account notes indicate that on February 20, 2015, SAA's attorney called Blitt to ask about whether the date of birth and social security information had been verified yet. Blitt responded that it was still under investigation.

On March 5, 2015, Blitt substituted as counsel for Freedman in the 8916 State Action and then moved to quash service upon SAA. The court granted SAA repayment of his appearance fee.

5

Although quashing service ended SAA's participation in the State Action, Blitt did not dismiss the case immediately. On March 12, 2015, a member of Blitt's compliance department mailed SAA's attorney a letter, dated February 23, 2015, indicating that Blitt had received his client's fraud claim and that in order to process it, Blitt would need a copy of the police report and a notarized affidavit of fraud. It is Blitt's policy to send correspondences within 24 hours; however, this policy was not followed with this letter dated February 23, 2015. The affidavit was intended for use in Blitt's investigation, and it required SAA to provide identifying documentation and details of the fraud. SAA never contended that he was a victim of identity theft or fraud. SAA never acted on the fraud letter.

On April 1, 2015, Blitt emailed SAA's attorney to explain that since service in the 8916 State Action against his client had been quashed and the appearance fee ordered to be returned, there was no need to complete the fraud packet. Two days later, Blitt sent SAA a refund check for the appearance fee at the Aurora, Illinois address. Blitt performed a skip trace review on April 30, 2015, that showed the results for Syed Hussain Ali, who had a social security number ending in 8783, and was born in 1972, and was associated with the Aurora, Illinois address. Blitt did not issue an alias summons because it did not find a good address for the debtor of the 8916 Account other than the one in Aurora, Illinois. The 8916 State Action was dismissed in June 2015 for want of prosecution.

*1350 Account*

Portfolio purchased the debt on a First Premier Bank/Arrow Financial Services LLC account ("1350 Account") opened by an individual named "Syed Ali," who had incurred a balance of $1,142,42. The last four digits of the social security number associated with the 1350 Account was the same as SAA's social security number. On March 30, 2015, SAA called Portfolio in response to a collections letter, and he learned that Portfolio owned the 1350 Account, which was opened under his name and with his personal information. Portfolio also informed SAA that it

6

owned another debt associated with a "Syed Ali", but that debt was not associated with him. SAA confirmed his Aurora, Illinois address and informed Portfolio that his name was very common, as he had two brothers named "Syed Ali." SAA disputes that he fully understood which accounts Portfolio's representative was referencing and whether he confirmed his address. SAA only called Portfolio in response to the letter referencing the 1350 Account, but he gave the other collections letters sent to the Aurora, Illinois address to his attorney. Neither SAA, his wife, nor his son contacted any of the defendants, or their relatives having the name "Syed Ali," to verify the identity of the Debtor in those other letters.

On November 30, 2016, Portfolio served an offer of judgment as to Count IX of SAA's complaint, which SAA accepted. This resolved any outstanding claims involving the 1350 Account.

SAA testified that he experienced emotional distress and physical symptoms as a result of receiving service and the lawsuits filed. SAA's wife and son also experienced stress as a result of the lawsuits.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(c). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex*, 477 U.S. at 324. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)(citation omitted). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and if done,

7

judgment as a matter of law should be granted in its favor. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence that there is a genuine issue of material fact to survive summary judgment. *Roger Whitmore's Auto Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). "To determine whether genuine issues of material fact exist, we ask if 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013)(citing *Anderson*, 477 U.S. at 251-52). On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

**Discussion**

SAA moves for summary judgment in his favor on Counts I-V of the Amended Consolidated Complaint. Defendants filed cross-motions for summary judgment in their favor. This Court will address each Count.

*1. Counts I, II, and III*

The purpose of FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). SAA must first demonstrate that the FDCPA applies, by proving that 1) plaintiffs are "consumers"; 2) that each defendant is a "debt collector"; 3) that the Debt was a "debt" as defined by FDCPA; and 4) that defendants violated some provision of the act. *See Heyer v. Pierce & Assocs.*, P.C., No. 14 C 854, 2017 U.S. Dist. LEXIS 3144, at *13 (N.D. Ill. Jan. 9, 2017)(Finnegan, Mag. J.). The second element is not in contention. Therefore, the Court will only consider the record on the other elements.

8

The FDCPA defines "consumers" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Courts have read Section 1692a(3) to include individuals who are mistakenly dunned by debt collectors. *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011). Therefore, even if defendants sought to collect from SAA, mistakenly believing he was the Debtor because he shared the same name and address on the account, SAA is still a consumer under the FDCPA. Accordingly, this element is satisfied.

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Even though SAA claims that he did not incur the obligation and cannot personally attest to how it originated, he is not precluded from raising a claim under the FDCPA. *See Osborn v. J.R.S.-I., Inc.*, 949 F. Supp. 2d 807, 812 (N.D. Ill. 2013)(Holderman, J.)(recognizing plaintiff had a viable FDCPA claim even though she did not incur the debt and the collection efforts were incorrectly attributed to her). The FDCPA's definition of debt is not dependent upon one's relation to the amount owed but is defined by the underlying consumer transaction, which the evidence here proves is a consumer purchase. *See Shula v. Paul D. Lawent, J.V.D.B. & Assocs., Inc.*, No. 01 C 4883, 2002 U.S. Dist. LEXIS 24542, at *23 (N.D. Ill. Dec. 20, 2002)(Keys, Mag. J.)(citing *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997)).

Here, the credit account summary for the 8916 Account indicated that the Debt was for "CareCredit," which is a credit line designated for the purchase of health and personal care items, as well as copayments, deductibles, and prescriptions. The transaction generating the Debt was for payment to Alamo City Dental in San Antonio, Texas. The Debt from the 8916 Account is a "debt" under the FDCPA. As the first three elements are met, the Court will now turn to whether the defendants violated any of the provisions of the FDCPA.

A. *Section 1692d Claims*

SAA moves for summary judgment, arguing that Portfolio's state lawsuit was frivolous and harassing because it was directed at him, a person who defendants knew was not the Debtor. Portfolio and Blitt contend that they are entitled to summary judgment because the lawsuit filed against the Debtor was not a violation of Section 1692d.

Section 1692d prohibits a debt collector from engaging in any collection conduct that has the natural consequence of harassing, oppressing, or abusing a person. 15 U.S.C. § 1692d. The evidence does not support a conclusion that Portfolio and Blitt's collection efforts and lawsuit were directed at SAA. The record before the Court does not establish that SAA was the intended defendant in the 8916 State Action. Further, SAA has not offered evidence to demonstrate that Portfolio and Blitt exhibited bad faith in filing and litigating the suit, especially in light of the fact that Portfolio and Blitt contend that they honestly believed the intended Debtor lived at the Aurora, Illinois residence. SAA is not entitled to judgment as a matter of law on Counts I and II for a violation of Section 1692d.

The Court finds that Portfolio and Blitt are entitled to judgment in their favor on the Section 1692d claims. First, A single collection lawsuit, like the one here, is not a *per se* violation of Section 1692d. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330-31 (6th Cir. 2006); *Johnson v. LVNV Funding*, No. 13-C-1191, 2016 U.S. Dist. LEXIS 19651, at *27 (E.D. Wis. Feb. 18, 2016). "Even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor." *Id.* at 330.

Second, while there was a delay between when SAA's attorney provided Freedman with his client's personal information and the point when service was quashed, the evidence demonstrates that the delay was attributed to legitimate reasons. It is undisputed that the case was transferred to a

10

different collections firm, there was a verification process, and it took time for Blitt to file its appearance and quash service. There is no evidence that Portfolio or Blitt, avoided dismissing SAA or intentionally prolonged the process for the purpose of harassing him to repay the Debt.

Additionally, other than the letter and follow up call or email, Portfolio and Blitt's actions did not cause SAA's attorney to substantially participate in the litigation before service was quashed. There is also no evidence that Portfolio or Blitt harassed SAA by contacting him or his attorney to encourage payment once the incorrect social security number was brought to Defendants' attention. While it is true that Portfolio and Blitt had access to information that undermined the likely viability of the lawsuit during the period of "continued litigation," Portfolio and Blitt's delayed action leading up to dismissal of the case against SAA does not violate Section 1692d. *See Juarez v. Portfolio Recovery Assocs., LLC*, No. 14 C 5928, 2015 U.S. Dist. LEXIS 105746, at *15 (N.D. Ill. Aug. 12, 2015)(Zagel, J.). For these reasons, defendants' motions for summary judgment as to the Section 1692d claims in Counts I and II are granted.

  *B. Section 1692e Claims*

SAA seeks summary judgment based on his contention that defendants violated Section 1692e by falsely representing that he owed the debt on the 8916 Account by sending collection letters and serving a summons directed at "Syed Ali" at his home. Portfolio and Freedman separately argue that they are each entitled to summary judgment on SAA's Section 1692e claims because their actions are excused by the *bona fide error* defense. *See* 15 U.S.C. § 1692k(c). Blitt separately argues for judgment in its favor on the Section 1692e claim, arguing that the undisputed evidence indicates that Blitt did not communicate or litigate in a misleading or deceptive manner.

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with collection of any debt." This bar encompasses misrepresenting the character, amount or legal status of the debt, 15 U.S.C. § 1692e(2)(A)-(B); using

11

idle threats to take unlawful actions, 15 U.S.C. § 1692e(5); or using any false representation or deceptive means to collect the debt, 15 U.S.C. § 1692e(10).

The test for determining whether a debt collector violated § 1692e turns on whether the debt collector's conduct would deceive or mislead an unsophisticated and reasonable consumer, not on the debt collector's knowledge. *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). While the "unsophisticated debtor" is considered "uninformed, naive, or trusting," he is still presumed to have a basic understanding of finances and be "capable of making basic logical deductions and inferences." *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006)(citing *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004)). Consequently, to prevail on summary judgment, a plaintiff must demonstrate, beyond his own subjective belief, that the debt collector's actions would similarly mislead others. *Id.* A defendant may prevail on a Section 1692e claim at summary judgment if the collection effort would not be objectively confusing to a significant portion of the population. *Id.* (citing *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 575 (7th Cir. 2004)). There is a triable issue of fact if the collection communication is confusing or unclear on its face. *Id.* (citing *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)).

The Section 1692e FDCPA violations against Portfolio stem from its alleged failure to confirm the account Debtor's personal information and recognize that it differed from SAA's information before pursuing collections and the lawsuit. This Court finds that there is a question of fact whether a reasonable, unsophisticated consumer would be misled by Portfolio's actions. SAA was upset and confused by the letters and the lawsuit against "Syed Ali." Indeed, mistakenly being sent a demand letter or being served with a lawsuit in one's name, taken in isolation, could be confusing. Even though SAA was aware that several of his relatives bore the name "Syed Ali" and maintained that he never owed the debt, it is not unreasonable as a matter of law for an unsophisticated consumer in his position to deduce that he was the target of a debt collection effort.

12

The reasonableness of his belief is a factual issue best reserved for a jury. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003).

Portfolio argues that even if its actions could be construed as a violation of Section 1692e, it is still entitled to judgment in its favor because its actions were the result of a *bona fide error*. *See* 15 U.S.C. § 1692k(c). To qualify for the *bona fide error* defense, Portfolio must show that the FDCPA violation was unintentional, the violation resulted from *bona fide error*, and the defendants maintained procedures reasonably adapted to avoid such error. *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 537 (7th Cir. 2005).

There is no evidence in the record showing that Portfolio intentionally sought to target SAA, It is undisputed that Portfolio made several attempts to verify the Debtor's address through credit reporting agencies and counsel's letters and phone calls. Multiple sources indicated to Portfolio that the Aurora, Illinois address was an active address for the Debtor of the 8916 Account. Portfolio carried out its normal procedures under a mistaken belief that Debtor lived at the Aurora, Illinois address. Thus, the first and second factors of the test are satisfied.

To satisfy the third factor, Portfolio must demonstrate that it maintained procedures reasonably calculated to avoid the error in question. Recognized procedures include "internal controls," or processes that have regular orderly steps intended to avoid mistakes. *See Bass v. I.C. Sys.*, No. 17 C 3594, 2018 U.S. Dist. LEXIS 115115, at *16-17 (N.D. Ill. July 11, 2018)(Kennelly, J.)(citing *Jerman*, 559 U.S. at 587). "[T]hinly specified policies," however, are not considered adequate enough measures to qualify for the defense. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015).

Portfolio adopted procedures to avoid the error of serving and suing a debtor at the wrong address. Portfolio's calls, written correspondences, and pre-litigation review constitute a regimented, orderly processes used to verify addresses and to avoid advancing litigation against a Debtor at the

13

incorrect address. These measures have the specificity contemplated by the third element of the *bona fide error* test, *see Leeb v. Nationwide Credit Corp.*, 806 F.3d 895 (7th Cir. 2015). This Court, nonetheless, finds an issue of fact as to the sufficiency of Portfolio's controls and procedures since Portfolio was on notice from the August 29, 2014 TransUnion report, prior to its filing of the lawsuit against Syed Ali, that another Syed Ali lived at the address associated with the Debtor. Accordingly, the Court denies Portfolio's motion for summary judgment as to the FDCPA Section 1692e claims under Count I. *See Paz v. Portfolio Recovery Assocs.*, LLC, No. 14 CV 9751, 2016 U.S. Dist. LEXIS 84878, at *7 (N.D. Ill. June 30, 2016)(Alonso, J.)(finding that the district court correctly concluded that there was sufficient evidence to raise a triable issue on the third element and appropriately denied both parties' motions for summary judgment when the issue of whether the liability shield applies had yet to be determined).

Freedman also raises the *bona fide error* defense. Freedman maintains that it relied on the erroneous account holder information provided by Portfolio in sending the letter and summons to the "Syed Ali" at the Aurora, Illinois address. Freedman contends that it unintentionally violated FDCPA by processing the information in accordance with its collection policies and procedures and that no red flags were raised during its internal verification process.

Courts have found that unknowing reliance on inaccurate information can support a finding that the violation was unintentional. *Id.* (citing *Turner*, 330 F.3d at 996); *Gonzalez v. Lawent*, No. 03 C 2237, 2005 U.S. Dist. LEXIS 9504, at *20 (N.D. Ill. Apr. 28, 2005)(Brown, Mag. J.). Here, it is undisputed that Freedman was unaware that the Aurora, Illinois address was incorrect when it sent the letter and summons because it relied on Portfolio's information. While SAA argues that Freedman was not entitled to rely on the information Portfolio provided, courts in this district regularly recognize that a collector can reasonably rely on the creditor's representations about the validity of the debt. *See Polster v. Van Ru Credit Corp.*, No. 15 C 6676, 2017 U.S. Dist. LEXIS 48806,

at *16 (N.D. Ill. Mar. 31, 2017)(Kendall, J.); *Krawczyk v. Centurion Capital Corp.*, No. 06-C-6273, 2009 U.S. Dist. LEXIS 12204, at *36 (N.D. Ill. Feb. 18, 2009)(Dow, J.). In fact, debt collectors are not required to independently verify the validity of the debt, or independently research each account. *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). The undisputed evidence therefore establishes that Freedman's violation of the FDCPA, if any, was unintentional.

Moving on to the second factor, a *bona fide* error is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Ross*, No. 04 C 6557, 2006 U.S. Dist. LEXIS 11407 at *22. Freedman conducted its own secondary verification protocol, which included sending letters and calls to the suspected debtor, in order to confirm that the recipient was in fact the intended addressee. The Court finds that Freedman's compliance with its internal procedures show that its collection efforts were made in good faith despite the alleged violations. *See Kort*, 394 F.3d at 539 (finding that the erroneous application of incorrect information in accordance with procedures implemented to avoid violating FDCPA can be bona fide error).

On the third factor, Freedman maintains that it relied on the procedures in the agreement and its own internal policies to avoid the errors alleged here. SAA does not dispute the existence of these procedures but challenges the sufficiency of the process to avoid erroneous attempts to collect from the wrong person. A successful bona fide error defense does not require a debt collector to apply the most comprehensive approach to avoid errors. Courts have found it sufficient for defendants to take reasonable efforts to avoid violations if FDCPA. *Kort*, 394 F.3d at 539. Using even a couple of different types of precautions is sufficient to satisfy a debt collector's responsibility to protect against making false representations to consumers. *Polster*, 2017 U.S. Dist. LEXIS 48806 at *15; *Ross*, 480 F.3d at 497. Having examined the procedures set forth by Freedman, this Court finds that the review and verification procedures, the calls and correspondences, as well as the guide

15

for attorney review of EDI clients are adequate safeguards under the law. Accordingly, Freedman's motion for summary judgment as to Count III is granted.

Turning to the Section 1692e claim against Blitt, this Court finds that Blitt is entitled to judgment in its favor. SAA argues that Blitt violated Section 1692e when it sent his attorney a letter indicating that he was victim of fraud or identity theft. Blitt argues that the undisputed facts support judgment in its favor because the undisputed evidence indicates that Blitt did not employ communication tactics or litigate in a way that was deceptive or misleading. SAA has not offered any evidence proving that his attorney was misled by the letter in question, and therefore summary judgment in his favor is inappropriate. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2006). This Court must still determine whether the undisputed material facts support granting summary judgment in Blitt's favor.

This Court will first address whether the fraud claim letter sent to SAA's attorney was actionable and likely to deceive a competent lawyer. *Weber v. Seterus, Inc.*, No. 16 C 6620, 2018 U.S. Dist. LEXIS 51490, at *33 (N.D. Ill. Mar. 28, 2018)(Durkin, J.). The undisputed evidence indicates that SAA's attorney received the letter after service upon him had already been quashed and SAA's involvement with the case ceased. Upon receiving the fraud affidavit letter, SAA's attorney did not respond or take any additional action to litigate or pay the debt. He could have called Blitt to clarify if he was confused, but he did nothing. The record does not show that SAA's attorney was deceived or induced to move forward in paying the debt, or even in continuing the litigation after he received the erroneous fraud letter.

Second, the undisputed facts show that Blitt quashed service upon SAA a month after receiving the case and concluding its investigation into SAA's personal information. Whether Blitt immediately dismissed the suit or continued to ascertain more information about the person it believed was the Debtor after service against SAA was quashed is irrelevant because SAA's

16

involvement with the 8916 state action had already been terminated. Finally, other than the letter addressed above, the record shows that the only action that Blitt took after officially joining the case was to terminate SAA's involvement as soon as practicable. This is not misleading or deceptive conduct. Accordingly, Blitt is entitled to summary judgment as to the Section 1692e claims under Count II.

*C. Section 1692f and f(1) claims*

SAA and Defendants both move for summary judgment as to the appropriateness of the collection efforts. SAA argues that the collection letters, fees assessed, and lawsuit, which was wrongfully directed at him, are an unfair and unconscionable means of collection in violation of Section 1692f. SAA also argues that the fraud claim letter violated Section 1692f. Defendants argue that it is entitled to judgment as a matter of law because SAA's basis for this claim is identical to others alleged under 1692e.

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," which includes collecting amounts not expressly authorized by the agreement creating the debt. 15 U.S.C. § 1692f-f(1). It is intended to be a "catchall provision that 'broadly prohibits unfair and unconscionable conduct, where the conduct is similar to that prohibited by the FDCPA but not covered by any other section therein.'" *Rhone v. Med. Bus. Bureau, LLC*, No. 16 C 5215, 2017 U.S. Dist. LEXIS 177800, at *6-7 (N.D. Ill. Oct. 25, 2017)(Der-Yeghiayan, J.)(citation omitted).

SAA's two Section 1692f claims here seek relief for the same harm alleged under the Section 1692e—that the collection efforts, fee requests, fraud letter, and lawsuit were unlawful practices. SAA cannot recover twice for the same conduct. *Id.* Moreover, this Court finds that SAA has failed to contradict with admissible evidence the fact that Portfolio or Blitt acted in good faith compliance with their business protocol in directing their efforts who they believed was the true Debtor. *Juarez*

17

*v. Portfolio Recovery Assocs., LLC*, No. 14 C 5928, 2015 U.S. Dist. LEXIS 105746, at *8 (N.D. Ill. Aug. 12, 2015)(Zagel, J.)("A debt collector that files suit expecting in good faith to prove its claim, even if he does not ultimately prevail, will not be liable under the FDCPA."). Additionally, the evidence does not show that the fraud affidavit letter was meant to coerce payment of the debt or had that effect. This is particularly true in light of the fact that Blitt contacted SAA's attorney to inform him that he should disregard the fraud letter within two weeks of realizing the subpoena against SAA had been quashed. Accordingly, Portfolio and Blitts' motions for summary judgment on this 1692f claim in Counts I and II is granted and SAA's motion for summary judgment is denied.

*2. Count IV – Fair Credit Reporting Act and FDCPA Section 1692f claims*

SAA moves for summary judgment on Count IV, claiming violations of the Fair Credit Reporting Act because Portfolio had no permissible purpose for pulling his credit report and ran reports without his consent. Portfolio argues that it is entitled to summary judgment because the evidence shows that it owned an account where SAA was the debtor, which permitted them to access his credit report.

Section 1681b(f) of the FCRA provides that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." A permissible use is when a credit report is furnished "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A) and 15 U.S.C. § 1681b(f)(1).

The undisputed facts show that SAA's credit report was pulled twice by TransUnion and three times by Experian. The first TransUnion report was inadvertently pulled in response to an inquiry for the Debtor's name with the Aurora, Illinois address, and Portfolio cannot be held responsible for TransUnion's error. *See Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617, 623

18

(N.D. Ill. 2011)(Dow, J.)(dismissing claim because facts alleged indicate that access to plaintiff's information was the inadvertent mistake of the credit agency, not the collector's use). The second TransUnion report and three Experian reports were sent to Portfolio as updated contact information for SAA in connection with the 1350 Account to which SAA was the actual debtor. The collection efforts on the 1350 Account were not resolved with SAA until November of 2016. It is permissible to use credit reports in connection with collection efforts. 15 U.S.C. § 1681b(a)(3)(A). SAA has not met his burden of proving that Portfolio lacked any permissible purpose and therefore, the Court denies summary judgment in SAA's favor. *Washington v. S. Shore Bank*, No. 02 C 7403, 2004 U.S. Dist. LEXIS 17246, at *19 (N.D. Ill. Aug. 26, 2004)(Plunkett, J.). Conversely, this Court finds that Portfolio is entitled to summary judgment on Count IV because the evidence shows that portfolio's actions were justified or excusable.

Additionally, the undisputed evidence shows that the credit reports were legitimately pulled, and SAA has produced no evidence to show how obtaining the reports were unfair or unconscionable, it follows that this conduct is not the type contemplated as a basis for violating Section 1692f. *See* 15 U.S.C. § 1692f(1) – (8). Accordingly, SAA's motion for summary judgment as to this conduct under Section 1692f of FDCPA in Count I is also denied. Portfolio's motion for summary judgment as to the Section 1692f claims in Count I is granted.

*3. Count V – Illinois Collection Agency Act*

SAA also moves for summary judgment on Count V, alleging that defendants violated Section 9(a) of the ICAA by filing suit against him even though he was not the Debtor. As set forth in the companion opinion addressing SHA's motion for summary judgment, courts in this district have recently declined to recognize any private right of action under Section 9(a). *See Eul v. Transworld Sys.*, 2017 U.S. Dist. LEXIS 47505, 2017 WL 1178537, at *17 (N.D. Ill. Mar. 30, 2017)(Castillo, J.)("[N]o Illinois appellate decision before or since [Sherman] has found, applied, or

19

even mentioned an implied private right of action under § 9—or, so far as this Court's research reveals, any other provision of the ICAA."); *Skinner v. LVNV Funding, LLC*, No. 16 C 7089, 2018 U.S. Dist. LEXIS 2812, at *6 (N.D. Ill. Jan. 8, 2018)(Aspen, J.) *Keys v. Collection Prof'ls, Inc.*, No. 16 C 8452, 2018 U.S. Dist. LEXIS 48803, at *25 (N.D. Ill. Mar. 25, 2018)(Kendall, J.).

Accordingly, SAA cannot prevail where there is no private right of action. SAA's motion for summary judgment as to Count V is denied, and the claim is dismissed for lack of jurisdiction *sua sponte* pursuant to Federal Rule of Civil Procedure 12(h)(3).

**Conclusion**

Based on the foregoing, this Court denies SAA's motion for summary judgment in its entirety. Freedman's motion for summary judgment is granted. Portfiolio and Blitt's motions are granted in part and denied in part. Count V is dismissed for lack of jurisdiction.

IT IS SO ORDERED.

ENTERED:  SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: September 30, 2018