UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYED A. ALI, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case no.: 15-cv-06178 |
| | ) | |
| v. | ) | |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC | ) | Judge Sharon Johnson Coleman |
| and BLITT & GAINES, P.C. | ) | Magistrate Judge Mary M. Rowland |
| and FREEDMAN ANSELMO LINDBERG, LLC | ) | |
| n/k/a ANSELMO LINDBERG OLIVER, LLC | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| YASMEEN ALI, | ) | |
| as natural parent and best friend of SHA, a minor, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case no.: 15-cv-11582 |
| | ) | |
| v. | ) | |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) | |
| and SANJAY S. JUTLA, and KEVIN J. EGAN, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| SYED A. ALI, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case no.: 16-cv-01581 |
| | ) | |
| v. | ) | |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) | |
| and KEVIN J. EGAN, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| SYED A. ALI, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case no.: 16-cv-03872 |
| | ) | |
| v. | ) | |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

1

## PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

Plaintiffs, by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 59(e), moves to alter or amend the September 30, 2018, Memorandum Opinions and Orders (Dkts. # 251-252) partially granting Defendant Portfolio Recovery Associates Motion for Summary Judgment. Plaintiffs respectfully ask that these orders be altered or amended in two ways: (1) to deny Defendant's motion as to violations of § 1692f vis-à-vis Plaintiff Sayed A. Ali and (2) to rule that Plaintiff provided sufficient evidence to show that the debt PRA was attempting to collect from SHA (the "7779 Account") was a consumer debt .

## Procedural Background

Plaintiff Syed A. Ali filed his initial complaint on July 14, 2015 (Dkt. # 1) and this court consolidated several other cases filed by Syed A. Ali, and his then-minor son, Syed H. Ali, on April 25, 2016. (Dkt. # 66). The parties filed their cross-motions for summary judgment on April 24, 2017 (Dkt. # 170, 177, 178, 182), their responses to the cross-motions for summary judgment on June 5, 2017 (Dkt. # 215, 217, 218, 220), and their replies on June 26, 2017 (Dkt. # 228, 229, 231, 233). This court issued its Memorandum Opinions and Orders for Syed H. Ali (Dkt. # 251) (the "SHA Order") and Syed A. Ali (Dkt. # 252) (the "SAA Order") on September 30, 2018, dismissing Defendant's Blitt & Gaines, P.C. and Freedman Anselmo Lindberg, LLC from the action and granting partial summary judgment for Defendant PRA, Kevin Egan and Sanjay Jutla, and denying summary judgment for Plaintiffs.

## Legal Standard

A Rule 59(e) Motion to Alter or Amend a Judgment is appropriate to correct manifest errors of law or fact. *See, Sigsworth v. City of Aurora, Ill.,* 487 F.3d 506, 512 (7th Cir. 2007); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995). A motion for

reconsideration is proper where "the Court has patently misunderstood a party … or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). The motion also performs a valuable function and is premised on the principal of judicial economy, as it allows the court to "correct its own errors and thus avoid unnecessary appellate procedure." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996).

## Argument

### I. A consumer can seek relief under both 15 U.S.C. § 1692e and § 1692f

This Court granted summary judgment to Defendant PRA on Plaintiff SAA's § 1692f claims because the Court ruled that SAA sought "relief for the same harm alleged under the Section 1692e—that the collection efforts, fee requests, fraud letter, and lawsuit were unlawful practices" and that "SAA cannot recover twice for the same conduct." (SAA Order, p. 17.) But SAA is not seeking a double recovery. It is well settled that a consumer's recovery under the FDCPA does not increase lockstep with each violation proven. *See Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 385-87 (7th Cir. 2018). Rather, the number and types of FDCPA violations are one factor in determining the appropriate amount of statutory damages. Thus, the violation of two separate sections of the FDCPA would not entitle SAA to a double recovery of statutory damages, but instead would be one factor the Court (or jury) could consider in determining statutory damages.

The Seventh Circuit has observed that claims under § 1692f may proceed alongside claims under § 1692e that arise from the same misconduct without implicating any issues of double recovery. *See Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (noting that if it was true that the debt collector sued the consumer after the statute of limitations

on the claim had run, the collector's suit would violate FDCPA, and citing both §§ 1692e and 1692f); *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 762-65 (7th Cir. 2006) (holding that a plaintiff's claims under both § 1692e and § 1692f, based on the same collection letter, should not be dismissed); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) (same).

There is nothing in the language of §§ 1692e or 1692f, or indeed anywhere in the FDCPA, suggesting that these subsections are mutually exclusive. A consumer's recovery for statutory damages is capped at $1,000 per action, regardless of the number or types of violations. *See Portalatin*, 900 F.3d at 385-87. While a violation of § 1692e does not automatically mean that a violation of § 1692f occurred, finding a § 1692e violation should not preclude finding a violation of § 1692f for the same misconduct.

Indeed, finding that misconduct violated both § 1692e and § 1692f is relevant to the issue of statutory damages. Under § 1692k(b), the factors for determining damages statutory damages include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . ." 15 U.S.C. § 1692k(b). Finding that PRA violated both § 1692e and § 1692f speaks to these factors. Additional violations indicates a greater "frequency and persistence" that supports a higher damages award. Multiple types of violations shows that "the nature of such noncompliance" was broader than only one type of violation, and also supports a higher damage award. None of these factors will result in SAA getting more statutory damages than the $1,000 cap, but they will impact whether SAA is entitled to the full $1,000 or something lesser.

This court cites *Rhone v. Med. Bus. Bureau, LLC*, No. 16 C 5215, 2017 U.S. Dist. LEXIS 177800, at *6-7 (N.D. Ill. Oct. 25, 2017)(Der Yeghiayan, J.) for the proposition that liability

under 1692e forecloses liability under 1692f. But *Rhone* is directly at odds with established Seventh Circuit precedent, including *Phillips*, *McMillan*, and *Fields*. This Court should discard *Rhone* as the outlier that it is, and instead follow the path set forth by the Seventh Circuit, which supports finding that the same misconduct could violate both § 1692e and § 1692f.

II. **Plaintiff provided sufficient evidence to show that the 7779 Account was a consumer debt**

The Court denied both parties' summary judgment motions on the issue of whether the SHA's alleged debt was a consumer debt. Specifically, the Court noted that "SHA affirms that he did not have any personal knowledge of the transactions underlying the 7779 Account debt. Defendants also have not offered evidence of what type of underlying transaction generated the debt". (SHA Order, p. 6.) In making this ruling, the Court failed to consider the lower evidentiary burden placed on FDCPA plaintiffs who were targeted for collection on debts they do not owe.

Several courts have held that the standard of proof on the "consumer" nature of a debt must be lowered when an FDCPA plaintiff demonstrates that collection of the subject debt arose from identify theft or mistaken identify. In other words, where a plaintiff never incurred the debt to begin with, they are given more leeway in presenting evidence of the consumer nature of the debt. This makes good sense, as the plaintiff whose identity was stolen or mistaken cannot possibly know the intent or purpose of a third party in taking out a debt—particularly an unknown third party.

The court in *Martin v. Allied Interstate, LLC* confronted this issue directly. 192 F. Supp. 3d 1296, 1304-06 (S.D. Fla. 2016). The court, like the Court here, rejected the notion that "a plaintiff's assertion of identity theft or mistaken identity *alone*" is enough to establish a "debt" under the FDCPA. *Id.* at 1306 (emphasis in original). But the *Martin* court also recognized that

5

the burden of proof on a victim of identity theft or mistaken identity cannot be the same as the burden on a true debtor. To that end, the court concluded that such a plaintiff "need not present evidence of the intent or purpose of an unknown person in entering the transaction, but should present evidence of the identity theft or mistaken identity along with *some* evidence showing that the debt is consumer in nature." *Id.* at 1306 (emphasis in original). *See also Burton v. Kohn Law Firm S.C.*, Case No. 16-CV-594, 2018 U.S. Dist. LEXIS 62821 (E.D. Wis. Apr. 13, 2018) ("[I]dentity theft may also be a factor in determining the evidence needed to establish the existence of a consumer debt."); *Boosahda v. Providence Dane LLC*, 462 Fed. Appx. 331, 336 at n. 7 (4th Cir. 2012) (nothing that a court should look at all relevant factors, including identity theft, when making the consumer debt inquiry); *Collins v. Portfolio Recovery Associates, LLC*, Case No. 2:12-CV-138, 2013 U.S. Dist. LEXIS 162624 (E.D. Tenn. June 7, 2013) ("The Court believes that Defendants' position—that a consumer cannot pursue an FDCPA action where she alleges she lacks knowledge of the nature of the obligation because of identity theft—is untenable.).

As the victim of identity theft or mistaken identity, SHA cannot provide first-hand knowledge regarding the purpose and intent behind the charges incurred on 7779 Account, and he has no way of doing so. Instead, consistent with *Martin*, SHA has sufficiently shown that he was a victim of identity theft or mistaken identity and he has provided *some* evidence of the consumer nature of the 7779 Account. As to identity theft or mistaken identify, SHA presented evidence showing that the social security number attached to the 7779 Account was not SHA's social security number, nor that of his father. (Defendant PRA's Response to Plaintiff SHA's Statement of Material Facts (hereafter, "DRSMF"), Dkt. # 214, ¶ 8.) This shows that SHA was either the victim of identity theft, or, more likely, mistaken by PRA as the debtor on the 7779

Account. Moreover, SHA was a minor at the time the 7779 Account was created, and thus could not have legally incurred it. PRA has also admitted that SHA is not personally liable for 7779 Account. (DRSMF ¶ 10.)

SHA has likewise provided *some* evidence of the consumer nature of the 7779 Account that justifies judgment in his favor. First, the evidence shows that PRA treated the 7779 Account as a consumer debt. Communications from PRA indicated that it was a debt collector, subject to the FDCPA, attempting to collect a debt. (SHA Order, p. 6.) It also appears that PRA treated the debt as a consumer debt. For example, PRA sued SHA in his individual capacity and not as a representative of any business and no business was named in the lawsuit. (DRSMF ¶ 33.) This evidence alone is not dispositive, since a debt collector may treat a debt of unknown origin as a consumer debt out of an abundance of caution. (SHA Order, p. 6.) But it serves as *some* evidence in favor of the debt being consumer in nature.

Second, the evidence demonstrates that nearly every debt that PRA attempts to collect is a consumer debt. (DRSMF ¶ 12-13.)[1] PRA's Account Representative Training Manual state that PRA "purchases and manages portfolios of defaulted and bankruptcy *consumer receivables*" and that PRA's "*primary business* is the purchase and liquidated of distressed *consumer debt*." (*Id.* ¶ 12 (emphasis added).) The Court correctly observed that PRA's "status as debt collectors under FDCPA is not automatically dispositive of the consumer debt issue because the evidence does not show that defendants exclusively collect consumer debts." (SHA Order, p. 6.) Plaintiffs do not demand that such evidence be automatically dispositive. But the nature of PRA's business, with its near-exclusive focus on consumer debts, qualifies as *some* evidence that the 7779

---

[1] While PRA disputes the materiality of these facts and states that it does not "exclusively" collect consumer debt, this is not the contention of these statements, which cite PRA's own training manual indicating that "PRA's 'primary business is the purchase and liquidation of distressed consumer debt". Plaintiff SHA's Statement of Material Facts, Dkt. # 214, ¶ 12.

Account was indeed a consumer debt. If the nature of the debt is ultimately unknown (and PRA has produced no evidence of its genesis), and the vast majority of debts that PRA collects are consumer in nature, it is reasonable to conclude that it is more likely than not that *this* debt would also be consumer in nature.

Third, PRA filed the lawsuit against SHA individually, and sent communications to SHA individually. Nowhere does PRA ever reference a business of any kind, in its letters or in its collection complaint. (DRSMF ¶ 12.) Similarly, the "load data" and credit statements that PRA produced for the 7779 Account make no reference to any business. Instead, they identify only an individual with the same name as SHA, and such individual's personally identifying information. (Plaintiff SHA's Statement of Material Facts, Dkt. # 214, ¶ 19.) While it is certainly *possible* to maintain records and take collection action on a business debt without ever referencing a business from only an individual without referencing any business, the more probably conclusion is that the absence of any reference to a business means there was no connection to any business. Once again, this is *some* evidence that the debt was consumer in nature.

Fourth, PRA has not cited any evidence of any kind suggesting that the 7779 Account is a non-consumer debt. (DRSMF ¶ 11.) As a result, the *only* evidence before the Court supports SHA's claim that the 7779 Account is a consumer debt. While the evidence is not direct testimony of the debtor's intentions that would be automatically dispositive, the *Martin* and *Burton* cases demonstrate that such evidence is unnecessary in cases involving identity theft or mistaken identity.

What SHA has produced is, quite literally, every possible thing that a similarly situated plaintiff could produce to demonstrate the consumer nature of a debt he or she never incurred. The person who actually incurred the debt refused to show up for a scheduled deposition, so his

testimony is unavailable.[2] And the statements or other papers for the 7779 Account would add no support. The specific items that a person bought do not and cannot speak to the *purpose* for which they were bought. *See Burton*, 2018 U.S. Dist. LEXIS 62821 at.*15 (charges on billing statement from gas station and office supply store "do not facially show that the charges were made for personal use").

As such, SHA has produced the only evidence that a similarly situated victim of identity theft or mistaken identity could possibly produce to demonstrate the consumer nature of the debt: (1) evidence showing that the debt collector treated the debt like a consumer debt; (2) evidence showing that the debt collector almost exclusive collects consumer debts, leaving only a small chance that this particular debt is non-consumer; and (3) the available records about the debtor showing that no business was ever involved with the debt. Following *Burton* and *Martin*, this is certainly enough evidence for the Court to decide that the 7779 Account was indeed a consumer debt.

PRA's complete lack of contrary evidence, combined with SHA's showing, *is* dispositive of the consumer-debt issue. With no evidence *at all* to suggest that the 7779 Account was non-consumer, in contrast to SHA's evidence showing that the 7779 Account likely was a consumer debt, no reasonable jury could conclude that it was a non-consumer debt. As such, the Court should grant judgment in SHA's favor on this issue. *See Old Republic Ins. Co. v. Fed. Crop. Inc. Corp.*, 947 F.2d 269, 273-74 (7th Cir. 1991) (summary judgment is appropriate "when the record reveals that no reasonable jury could find for the non-moving party").

Moreover, there is no doubt that SHA is a "consumer" under the FDCPA. Notably, the Court specifically found that SHA's father, Syed Asad Ali ("SAA"), *was* a consumer obligated

---

[2] PRA issued a subpoena to a Syed H. Ali at 13518 Venice Villa Lane, Sugar Land, Texas 77498, demanding this individual appear for a deposition in Houston Texas on January 5, 2017. However, no such individual appeared.

to pay a *debt*, citing *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011). (SAA Order, p. 9.) As the Court noted:

> The FDCPA defines "consumers" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Courts have read Section 1692a(3) to include individuals who are mistakenly dunned by debt collectors. *Dunham v. Portfolio Recovery Assocs., LLC,* 663 F.3d 997, 1002 (8th Cir. 2011). Therefore, even if defendants sought to collect from SAA, mistakenly believing he was the Debtor because he shared the same name and address on the account, SAA is still a consumer under the FDCPA. Accordingly, this element is satisfied.

Thus, Defendants' attempt to collect money from SAA, even if by mistake, placed SAA in the position of a consumer vis-à-vis the FDCPA. (*Id.*) The reasoning is equally applicable to SHA in this case, as there is no dispute that the collection of the alleged debt from SHA (a minor) was by mistake, whether it was due to identity theft or just mistaken identity. Either way, because of this fact, he is a "consumer" under *Dunham* and this Court's reasoning as to SAA, his father. As SHA was mistakenly collected from, he is a consumer. Since he is a "consumer" under section 1692a(3)— *allegedly* obligated to pay *any debt*—the obligation he owed must, by definition, be construed as a "debt" as that term is understood and used in the FDCPA.

Further, after the Court rendered its decision, the Seventh Circuit issued an opinion clarifying whether a consumer who has alleged that they are the victim of identity theft or mistaken identity can be a consumer under the FDCPA, even though they did not incur the debt. *Loja v. Main Street Acquisition Corporation*., App. No. 17-2477, 2018 U.S. App. LEXIS 29400 (7th Cir., Oct. 18, 2018). In *Loja*, the plaintiff was sued by a debt collector on a debt he claimed was not his. The Seventh Circuit ruled that the plaintiff still qualified as a "consumer" even though he did not owe the debt and had no knowledge of its purpose, explaining that "the text of 15 U.S.C. §1692a(3) does not limit 'alleged' to obligations alleged by the *consumer*. The 7th Circuit could not have been more clear in stating that, despite that Loja admittedly had no

knowledge as to the origin or nature of the debt, "We agree that based on the text of the FDCPA and circuit precedent Loja is a qualifying consumer for purposes of the FDCPA." *Id*. at *2. The word applies generally and consequently includes obligations alleged by a *debt collector* as well. *Id.* at *5 (emphasis in original). While the *Loja* court did not expressly state whether the alleged debt would automatically be considered a "debt" under the FDCPA, the fact that one allegedly obligated to owe a debt is <u>automatically</u> deemed a consumer under the FDCPA, without needing to prove the nature of the debt, supports the reduced evidentiary burden set forth in *Martin* and other cases.

None of SHA's evidence of the consumer nature of the 7779 Account, in isolation, is dispositive on whether the alleged debt is a consumer debt. In combination and in light of SHA's status as a victim of identity theft or mistaken identity, However, they are enough to support summary judgment. Contrasting this with PRA's complete and utter lack of evidence that the debt was anything but consumer in nature, judgment should be granted to SHA as a matter of law on this issue.

## **Conclusion**

Because Plaintiffs are entitled to seek relief under both 15 U.S.C. § 1692e and § 1692f, and because Plaintiff provided sufficient evidence to show that the debt PRA was attempting to collect was a consumer debt, the Plaintiffs respectfully request this Court amend or alter its Order of September 30, 2018, granting partial summary judgment to Defendant Portfolio Recovery Associates, LLC, Kevin Egan and Sanjay Jutla.

By: /s/ *Bryan Paul Thompson*

Bryan Paul Thompson
Robert W. Harrer
Chicago Consumer Law Center, P.C.
111 West Washington Street, Suite 1360
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

Daniel Brown (ARDC # 6299184)
Main Street Attorney, LLC
PO Box 247
Chicago, IL 60690
Ph: (773) 453-7410
Fx: (773) 453-6420
daniel@mainstreetattorney.com

Mario Kris Kasalo
The Law Office of M. Kris Kasalo, Ltd.
20 North Clark Street, Suite 3100
Chicago, IL 60602
Tel 312-726-6160
mario.kasalo@kasalolaw.com

## CERTIFICATE OF SERVICE

     I, Bryan Paul Thompson, hereby certify that on November 13, 2018, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

                                        Respectfully submitted,

                                        By: s/ *Bryan Paul Thompson*